## BOWLES, Estate of, In re.

Probate Court, Ashtabula County.

No. 40127.    Decided November 4, 1959.

*Mr. Lyle F. Merritt,* for Estate.

*Mr. William P. Meehan,* assistant attorney general, for Tax Commissioner.

PERRY, J.    George O. Bowles purchased a 26 year Endowment Life Insurance Policy from the Northwestern Mutual Life Insurance Company on June 8, 1920, by which the Company agreed to pay $1,000.00 to George O. Bowles on June 8, 1946, or to his beneficiary in the event the insured should die

before that date. This policy matured as an Endowment on June 8, 1946, as George O. Bowles was still alive on that date.

On May 21, 1946, the insured executed an instrument, which was attached to the policy, wherein he named *himself* as beneficiary to the proceeds—payable on June 8, 1946—and he designated his wife, Katherine Bowles only as *contingent* beneficiary thereunder.

He further stipulated in this instrument that: "Settlement of such proceeds shall be made with *me* in accordance with the provisions of option A in annual payments at the minimum rate of $30.00 per $1,000." Option A provides that *upon the death* of the insured, settlement shall be made in one sum with the contingent beneficiary.

George A. Bowles did not die until January 20, 1959— nearly 13 years after the policy had matured.

No mention of this policy was made in the original application to determine the inheritance tax and the Executrix thereupon filed a supplemental inheritance tax petition on July 20, 1959, at the request of the Department of Taxation which supplemental petition merely stated:

"Insurance Policy issued by the Northwestern Mutual Life Insurance Co., 720 East Wisconsin Ave., Milwaukee 2, Wisconsin, under which Katherine Bowles, surviving spouse, is the contingent beneficiary ..........$1070.00."

Nothing was said in the supplemental petition that this was an endowment policy and the Probate Court consequently found the new assets thus added not to be taxable under Section 5731.06, Revised Code, which Section reads as follows:

"Proceeds of policies of life insurance payable on the death of the insured, other than to the estate of the insured, shall not be considered as property passing within the meaning of Section 5731.02, Revised Code, whether paid directly by the insurer to the beneficiaries designated in such policies or to a trustee designated therein to be held and managed by such trustee and distributed to designated beneficiaries under an agreement or declaration of trust in the manner prescribed by the insured in said agreement or declaration of trust."

Thereupon the Department of Taxation filed exceptions to this Court's ruling and at the hearing and also in the brief sub-

sequently filed by the Department it was contended that an Endowment Policy, *after it has matured,* is not exempt from inheritance tax.

The Department claims that an Endowment Policy, after maturity, ceases to be life insurance and is just a form of investment; that after June 8, 1946, the Company no longer assumed any risk because at that time George O. Bowles had already paid in to the Company $1,094.08, which is more than the face of the policy. The Department contends that after maturity the Company was merely holding the money for the owner of the policy as an investment at 3% interest, and that George O. Bowles had the right, at any time after June 8, 1946, to withdraw his money if he wanted to do so.

The Department cited the case of *Kasishke's Estate* v. *Oklahoma Tax Commission,* 311 P. (2nd), 804. The exemption statute in Oklahoma and also in Ohio (Section 5731.06, Revised Code), refers only to life insurance policies and not to matured endowment policies.

On page 808 of the above mentioned case the Court stated: "It seems to be well settled law that when an endowment policy, with life insurance features, matures as an endowment, it becomes and represents a liquidated investment and not life insurance."

On the part of the estate it was argued that the policy started out as a life insurance policy and therefore it continues as a life insurance policy until the proceeds are paid either to the insured or to the beneficiary.

George O. Bowles received dividends during his life time but the proceeds of the policy were not paid until after the death of the insured, so that the executrix claims that this policy which was payable on the death of the insured comes squarely within the provisions of Section 5731.06, Revised Code, and is therefore not taxable.

The exeecutrix does not believe *In re Estate of Chadwick,* 167 Ohio St., 373, cited by the Department is applicable to this case for the reason that the *Chadwick case* had to do with annuity contracts and not to life insurance policies. The *Chadwick case* held that annuities were not exempt from tax, as proceeds of life insurance, within the meaning of Section

5731.06, Revised Code, because the essential element of risk was not involved.

If George O. Bowles had died before the endowment policy had matured the amount payable to the contingent beneficiary, Katherine Bowles, would be exempt from inheritance taxes by reason of Section 5731.06, Revised Code. The policy in that event would still retain the characteristics of a life insurance contract. But after an endowment policy matures and the proceeds are left with the Company, as an investment, the risk element of life insurance is gone. For thirteen years George O. Bowles had control of this money to do with as he pleased. It was his money on deposit with the Company, invested at 3% interest. It was no longer life insurance.

It is my opinion that a matured endowment policy is subject to inheritance tax. After the endowment policy had matured the insured could either withdraw the money or leave it with the Company at 3% interest as an investment.

Suppose for example that he had chosen to withdraw the money and had placed it in a savings account in his bank at 3% interest and after *13* years had died testate naming his wife as beneficiary in his Will. That money in the savings account certainly would be subject to inheritance tax.

What is the difference?

What difference does it make whether he left the money in a bank or with the Insurance Company? It is an investment in either case. He had the right to withdraw the money at any time up until the very day he died. It was his money. The instrument attached to the policy executed May 21, 1946, directed that the settlement should be made with George O. Bowles. He had full control as beneficiary over this money for thirteen years up to the date of his death when it was to be paid to his "*contingent*" beneficiary, Katherine Bowles.

For these reasons, it is my opinion that the money on deposit with the Company is taxable and exceptions of the Department of Taxation are consequently sustained and appeal bond is fixed at $100.00.